HIGHT et al. v. HIRSCH et al.

(Circuit Court, D. Oregon. December 17, 1906.)

No. 3,044.

JUDGMENT—CONCLUSIVENESS—RES JUDICATA.

Where plaintiffs had been made defendants in two principal causes previously tried—one for partition of the land in controversy, and the other to quiet title thereto, and having answered, decrees were passed against them, such decrees constituted a complete estoppel precluding the maintenance of a subsequent suit by plaintiffs to quiet title.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 1092-1099.]

Action to Quiet Title.

The plaintiffs bring this suit to quiet the title to 54½ acres of land situate in Multnomah county, Or., being a portion of the south half of the William Blackistone Donation Land Claim. The complaint alleges, in brief, that on June 8, 1860, James A. Odell conveyed the south half of the William Blackistone claim to Laura Ann Blackistone, the wife of William, "for and during the term of her natural life, and from and after her decease to the children of the

said Laura Ann and William Blackistone who should survive the said Laura Ann, or if any of the said children should die leaving issue, then to the survivor of said issue, share and share alike, the issue of each child deceased taking the same share that its parents would have taken if living at the death of the said Laura Ann ;" that William and Laura Ann Blackistone had born to them four children. to wit, Francis Garrett. Augustus Charles, Clara E., and Tobias Myers; that Francis Garrett and Tobias Myers died in infancy; that Augustus Charles is now deceased, but left children surviving him, namely, the complainant Jessie Blackistone and defendant Arthur M. Blackistone; that Laura Ann Blackistone died in December, 1905; and that Augustus Charles died prior to that time. The bill of complaint further alleges that plaintiff Clara E. Hight (nee Blackistone) is the owner of an undivided one-half interest in said premises; that complainant Jessie Blackistone is the owner of an undivided one-fourth, and the defendant Arthur M. Blackistone is the owner of the remaining undivided one-fourth; and that the other defendants claim some interest therein adverse to plaintiffs, which constitutes a cloud upon their title. The defendants Josephine Hirsch and Jacob Mayer, the only two served. pleading separately, make answer in effect that the donation land claim of Blackistone was entered prior to his marriage with Laura Ann; that on June 8, 1860, Blackistone, desiring to make provision for his wife and their children, executed to James A. Odell, for a nominal consideration. a deed of conveyance for the said south half of his claim, and that Odell executed the deed mentioned in the bill of complaint to Blackistone's wife and children; that thereafter, to wit, on January 2, 1862, William Blacki- stone instituted a suit against his wife, in the circuit court of the state of Oregon for Multnomah county, for a divorce, wherein such proceedings were had that a decree was rendered annulling the marriage, and divesting the wife of all right to the premises conveyed, as aforesaid, and vesting the title thereto in their four children named, as set out in the bill of complaint, in equal proportions in fee simple; that subsequently Kallmes obtained judg- ment against one John Doscher and William Blackistone, and by virtue there- of, through execution duly issued, sold all the interest of defendants in and to the entire donation land claim of William Blackistone, and that Thomas Thoburn became the owner, through purchase and deed from the sheriff; that thereafter, on October 31, 1865, Thoburn instituted a suit against Doscher and wife Blackistone and wife, Charles A. Blackistone (being the Augustus Charles mentioned in the bill of complaint), Clara E. Blackistone, Charles M. Carter, and Sherry Ross, for the purpose of partitioning between the parties plain- tiff and defendant the said south half of said claim; that the defendants Augustus Charles and Clara E. Blackistone appeared and answered by their guardian; that Blackistone and wife and Doscher and wife also answered, and that it was finally decreed that Thoburn was the owner of the fee of the undivided half of the premises; that the defendants Charles A. and Clara E. Blackistone were the owners in equal parts of the remaining undivided one- half, and that the other defendants had no interest whatever therein; and, upon partition being had, the land described in the bill of complaint was set off to the plaintiff Thomas Thoburn, and the eastern portion of said south one- half of the claim, excepting 28 acres previously sold to A. P. Ankeny, to de- fendants Charles A. and Clara E. Blackistone; that subsequently A. P. Ankeny, Andrew J. Watson, Solomon Hirsch, Thomas A. Davis, Louis Fleischner, and Alexander Schlussel became the owners of the property described in the bill of complaint, and thereafter, and while such owners, and as owners thereof, on September 15, 1877, filed a complaint in the circuit court of the state of Oregon for Multnomah county. against Charles A. and Clara E. Blackistone, and others, to quiet their title to such property; that each of defendants duly entered an appearance, and that on November 20, 1877, it was adjudged and decreed that plaintiffs therein were the owners of the larger portion of said premises (describing the same), and that defendants had no interest whatever therein; that said cause was subsequently appealed to the Supreme Court of the state of Oregon, and affirmed: All of which is shown by way of estoppel in bar of the complainants' cause of suit. The present defendants appearing are connected up with the title thus decreed to be in the plaintiffs in that cause. Further than this, the statute of limitations is pleaded. These

answers are challenged by demurrers as insufficient by way of estoppel or other defense to plaintiffs' cause of action.

· James Kiefer, for complainants.
Teal & Minor, for defendant Josephine Hirsch.
Otto J. Kraemer, for defendant Jacob Mayer.

WOLVERTON, District Judge (after stating the facts). The defendants' answers are evidently drafted upon the theory that the decree in the divorce case alluded to therein became effectual as a merger of the life estate of Laura Ann Blackistone with the remainder in the children of the marriage, and that, from and after the date of such decree, the estate in fee was vested in such children, and that the father inherited the shares of the two that died in infancy. Subsequent proceedings set out are all in pursuance of this theory, and are grounded thereon. The plaintiffs, by their demurrers to the answers, combat the theory as not well grounded either in fact or in law; and this is the pivotal question about which the entire controversy turns.

There was an early statute of the state of Oregon which provided that:

"The court, in granting a divorce, shall make such disposition of and provision for the children as shall appear most expedient under all the circumstances, and most for the present comfort and future well-being of such children."

And, further, that:

"The court shall make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it, for the benefit of children."

This statute seems to have received construction in an early case, decided in 1864 (Jacob Cline v. John Hurly), which does not appear to have been reported, wherein it was held that the court had power by reason thereof to bestow on the children of divorced parties the real estate of the party in fault. This case is referred to in Doscher v. Blackiston, 7 Or. 403, 407, and it is there held that the construction thus given the statute had become a rule of property, and for that reason it should be adhered to. Coming directly to the present controversy, it was held in the latter case that the decree rendered in the case instituted by Blackistone against his wife for divorce vested the life estate of the wife in realty involved in the children, who held the estate in remainder, and that the whole estate became thereby vested in them when they received by this decree the particular estate held by their mother before the divorce. This was an adjudication concerning the very matter in question here, and it has been acted upon ever since; and, whether right or wrong in principle or law, it cannot now be disturbed or questioned. So that the theory of defendants has in its support this adjudication; and all the subsequent proceedings are, as formerly observed, based upon it. The subsequent case of Ankeny et al. v. Blackiston et al., 7 Or. 407, is in further confirmation of the title thus established. It was instituted for the purpose of quiet-

ing the title, and this perhaps because the doctrine of Doscher v. Blackiston was questioned. This case was tried out in the circuit court, and thereafter appealed to the Supreme Court and affirmed; and thus, by the highest judicatory of the state, the title to the property was decreed to be quieted in the plaintiffs in that suit. It is shown that the defendants who have answered herein derived their interest from the plaintiffs in that cause, and now rely implicitly upon such adjudication as confirming their title against the claim of the plaintiffs here. It seems beyond question that, the plaintiffs having been made defendants in the two principal causes alluded to, the first for partition and the second for quieting the title to the premises, and having answered therein, and decrees having gone against them, the records thus made up constitute a complete estoppel to their present suit, and the answers are therefore sufficient.

It is unnecessary to treat of the plea of the statute of limitations.

These considerations lead to an overruling of the demurrer, and it is so ordered.